# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 6, 2013

Lyle W. Cayce
Clerk

No. 12-41081

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DIEGO JAVIER NUNEZ-GRANADOS,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
U.S.D.C. No. 7:12-CR-699-1

Before STEWART, Chief Judge, and DeMOSS and CLEMENT, Circuit Judges.

PER CURIAM:*

Diego Javier Nunez-Granados pleaded guilty to assaulting, resisting, or impeding certain officers or employees in violation of 18 U.S.C. § 111 and to being found in the United States subsequent to deportation.  Pursuant to the aggravated assault Sentencing Guideline, the district court sentenced Nunez-Granados to 33 months' imprisonment followed by a year of supervised release.  Nunez-Granados appeals herein.  We VACATE and REMAND.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-41081

## I.

According to the presentence report (PSR), on May 2, 2012, Customs and Border Protection agents were actively tracking a group of suspected undocumented aliens and encountered multiple individuals, who attempted to flee on foot. Agent Shaun Paquette grabbed one of the individuals, later identified as Nunez-Granados, by the leg to prevent him from fleeing. According to the PSR, Nunez-Granados became combative and kicked Agent Paquette in the face multiple times while wearing shoes. In his report, Agent Paquette stated that Nunez-Granados turned his head to look at him and then kicked him in the face. After a brief struggle, Agent Paquette handcuffed and arrested Nunez-Granados. Agent Paquette was taken to a nearby hospital, where it was determined that he "sustained lacerations on the forehead and a mild deviation to the nasal septum." It was undisputed that Nunez-Granados was wearing some type of footwear at the time. Agent Paquette offered a brief victim statement, saying that he did not "think it was an accident."

Using the 2011 Guidelines Manual, the PSR recommended applying § 2A2.2, the aggravated assault Guideline, which provides a base offense level of fourteen. *See* U.S.S.G. § 2A2.2. The PSR further recommended a five-level enhancement under § 2A2.2(b)(3)(B) because the victim sustained serious bodily injury, and a two-level enhancement under § 2A2.2(b)(6) because Nunez-Granados was convicted under § 111(b). *See* U.S.S.G. § 2A2.2; 18 U.S.C. § 111.

Nunez-Granados objected to the use of § 2A2.2, arguing that the offense was not an aggravated assault; therefore, either § 2A2.3 (minor assault) or § 2A2.4 (obstructing or impeding officers) should apply. *See* U.S.S.G. §§ 2A2.2, 2A2.3, 2A2.4. He also objected to the enhancement for serious bodily injury.

At sentencing, Nunez-Granados conceded that there was bodily injury, but he objected to the application of the aggravated assault Guideline on the basis that his footwear was not a dangerous weapon. He further argued that

No. 12-41081

the requisite intent to cause bodily harm was not present, as the kicking was merely an effort to get free of Agent Paquette's grasp.  Rather, in the typical case when kicking constitutes use of a deadly weapon, the assailant is standing up and "kicking to the ground" or "stomping" on someone.  The Government conceded that the bodily injury was not serious but argued that § 2A2.2 should still apply because Nunez-Granados's assault involved the use of a dangerous weapon with intent to cause bodily injury.

The district court determined that the assault qualified as an aggravated assault and that § 2A2.2 applied.  *See* U.S.S.G. § 2A2.2.  However, the court imposed only a three-level adjustment for bodily injury rather than the recommended five-level adjustment for a serious bodily injury.  The total offense level was 19 and the guidelines range was 33 to 41 months.  The district court sentenced Nunez-Granados to concurrent terms of 33 months in prison and one year of supervised release.  Additionally, the district court stated that it would have imposed the same sentence regardless of scoring under the Sentencing Guidelines.  Nunez-Granados appeals herein.

## II.

"Following *United States v. Booker,* 543 U.S. 220 (2005), sentences are reviewed for reasonableness in light of the sentencing factors in 18 U.S.C. § 3553(a)." *United States v. Williams*, 520 F.3d 414, 422 (5th Cir. 2008) (citing *United States v. Mares,* 402 F.3d 511, 519-20 (5th Cir. 2005)).  "Although *Booker* rendered the Guidelines advisory, district courts are still required to properly calculate the advisory guidelines range prior to imposing a sentence." *Id.* (citing *Mares,* 402 F.3d at 519); *see also* 18 U.S.C. § 3553(a)(4).  "In calculating the guidelines range, the district court determines all facts relevant to sentencing in the same manner as before *Booker.*" *Williams*, 520 F.3d at 422. "If the sentencing judge imposes a sentence within a properly-calculated guideline range, the sentence is entitled to a nonbinding presumption of

reasonableness." *Id.* (citing *Rita v. United States,* 551 U.S. 338, 351 (2007); *United States v. Alonzo,* 435 F.3d 551, 553-54 (5th Cir. 2006)).

This court reviews the district court's application and interpretation of the Sentencing Guidelines de novo and the district court's factual findings for clear error. *United States v. Gonzalez-Terrazas*, 529 F.3d 293, 296 (5th Cir. 2008) (citations omitted). "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole." *United States v. Calbat*, 266 F.3d 358, 364 (5th Cir. 2001).

On appeal, Nunez-Granados argues that the district court erred in applying § 2A2.2, the aggravated assault Guideline, and that instead the court should have applied § 2A2.4, which pertains to obstructing or impeding officers, or § 2A2.3, which pertains to simple assault. *See* U.S.S.G. §§ 2A2.2, 2A2.3, 2A2.4.

Section 2A2.4 of the Sentencing Guidelines specifically applies to obstructing or impeding officers, but it provides a cross-reference, stating that, "[i]f the conduct constituted aggravated assault, apply § 2A2.2." *See* U.S.S.G. § 2A2.4(c); *see also* U.S.S.G. App'x A (providing that the Guidelines applicable to § 111 offenses are § 2A2.2 and § 2A2.4). Under the Guidelines, "[a]ggravated assault means a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (*i.e.* not merely to frighten) with that weapon; (B) serious bodily injury; or (C) an intent to commit another felony." *Id.* at § 2A2.2, cmt. n.1 (internal quotation marks omitted). The Government concedes that this case did not involve serious bodily injury or an intent to commit another felony. Thus, the question before this court is whether Nunez-Granados's offense involved a dangerous weapon with intent to cause bodily injury.

For purposes of aggravated assault, the Guidelines define the term "dangerous weapon" as an instrument that is "capable of inflicting death or serious bodily injury," as well as an object not capable of inflicting death or

No. 12-41081

serious bodily injury if it "closely resembles such an instrument," or if "the defendant used the object in a manner that created the impression that the object was such an instrument." *Id.* at § 1B1.1, cmt. n.1(D). In addition, the term "includes any instrument that is not ordinarily used as a weapon (*e.g.*, a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury." *Id.* at § 2A2.2, cmt. n.1.

Other circuits have held that, "in the proper circumstances, almost anything can count as a dangerous weapon, including walking sticks, leather straps, rakes, tennis shoes, rubber boots, dogs, rings, concrete curbs, clothes irons, and stink bombs." *United States v. Serrata*, 425 F.3d 886, 910 (10th Cir. 2005) (quoting *United States v. Dayea*, 32 F.3d 1377, 1379 (9th Cir. 1994)) (citations and internal quotation marks omitted).

Whether the defendant intended to use an instrumentality to cause bodily injury, and thus as a dangerous weapon, is a finding of fact that this court reviews for clear error. *United States v. Morris*, 131 F.3d 1136, 1138 (5th Cir. 1997). Intent to do bodily harm "is to be judged objectively from the visible conduct of the actor and what one in the position of the victim might reasonably conclude." *United States v. Perez*, 897 F.2d 751, 753 (5th Cir. 1990) (quoting *Shaffer v. United States*, 308 F.2d 654, 655 (5th Cir. 1962)); *see also United States v. Ortegon*, No. 01-51202, 2002 WL 1860281, at *1 (5th Cir. 2002) (unpublished).

Citing *Serrata* and *United States v. Hatch*, Nunez-Granados asserts that the cases in which courts have found that kicking someone qualified as the use of a dangerous weapon involved much more serious, repeated, and intentional kicking by the defendant than was present in his own case. S*ee, e.g., Serrata*, 425 F.3d at 909-10 (upholding a dangerous weapon enhancement where officers repeatedly kicked an inmate in the head with their boots); *United States v. Hatch*, 490 F. App'x 136, 137 (10th Cir. 2012) (unpublished) (affirming

5

enhancement where the defendant pulled a man out of his car and kicked at and "stomped on" his head repeatedly).  By contrast, Nunez-Granados argues, the kicking in this case is distinguishable because it happened when Agent Paquette grabbed his leg; both he and the agent were on the ground; and Nunez-Granados was "scrambling and trying to flee the scene."  We agree that the facts and circumstances of Nunez-Granados's case are distinguishable from those set forth in *Serrata* and *Hatch*.  S*ee, e.g., Serrata*, 425 F.3d at 909-10; *Hatch*, 490 F. App'x at 137.

The record reflects that when Agent Paquette grabbed Nunez-Granados's leg, Nunez-Granados kicked him multiple times in the face, causing lacerations and a mild deviated septum.  Both Agent Paquette and Nunez-Granados agree that the injuries sustained by the agent did not rise to the level of "serious bodily injury."  It is also clear from the record that the injuries happened immediately after Agent Paquette grabbed Nunez-Granados's leg and the two men were near the ground as Nunez-Granados was attempting to free himself from Agent Paquette's grasp.  While it is obvious that Nunez-Granados chose an aggressive way to free himself from the agent's grasp, *i.e*, by kicking him in the face with a shoed foot, this act does not rise to the level of the defendants' conduct in *Serrata* and *Hatch*.  The facts set forth in *Serrata* featured several officers standing over an inmate stomping on his head repeatedly with boots on.  *Serrata*, 425 F.3d at 909-10.  Similarly, *Hatch* involved a defendant who pulled a man out of his car and stomped on his head repeatedly as he lay on the ground motionless.  *Hatch*, 490 F. App'x at 137. Nunez-Granados's conduct simply does not compare to the egregious circumstances in these two cases.  Additionally, there is scant case law in this circuit providing guidance on the issue.

Accordingly, we conclude that when Nunez-Granados's "visible conduct" is viewed objectively in light of what a reasonable victim might conclude, *see*

No. 12-41081

*Perez*, 897 F.2d at 753 (quoting *Shaffer*, 308 F.2d at 655), the district court's determination that he intended to cause bodily harm with a dangerous weapon is not plausible in light of the record as a whole, *see Calbat*, 266 F.3d at 364 (5th Cir. 2001).[1]  Consequently, we hold that the district court's application of the aggravated assault enhancement during sentencing was erroneous.[2]  *See Gonzalez-Terrazas*, 529 F.3d at 296; U.S.S.G. § 2A2.2.

### III.

For the foregoing reasons, we VACATE and REMAND for resentencing.

---

[1] We do not hold herein that every situation where a defendant violates 18 U.S.C. § 111 by kicking an officer with shoes on will equate to the use of a dangerous weapon under U.S.S.G. § 2A2.2, thereby warranting an aggravated assault enhancement under the Guidelines.  The determination of such will depend on the specific facts and circumstances of each case.

[2] The district court's error was not harmless because the government cannot show that the district court: (1) considered the correct Guidelines range as well as the incorrect range, and (2) provided reasons sufficient to justify the sentence imposed as a variance from the correct Guidelines range.  *See, e.g.*, *United States v. Bonilla*, 524 F.3d 647, 656–59 (5th Cir. 2008).