**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 16-30341

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

RAFAEL VELASCO,

Defendant - Appellant

United States Court of Appeals
Fif h Circuit

**FILED**
May 5, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Louisiana

Before STEWART, Chief Judge, and HIGGINBOTHAM and COSTA, Circuit Judges.

CARL E. STEWART, Chief Judge:

Following a guilty plea for misprision of a felony, the district court applied a four-level sentencing enhancement for use of a dangerous weapon—shoes in conjunction with the "solid prison floor"—to Defendant-Appellant Rafael Velasco's sentence. Velasco appeals the enhancement. Finding no error, we AFFIRM.

**I.**

Velasco is an inmate at the Federal Correctional Complex in Oakdale, Louisiana. While there, he and Alonzo Deleon witnessed fellow inmate Christian Sanchez attack Gonzalo Esquivel with a sharp-edged object, leaving Esquivel with a severe cut along the side of his face and down his neck. Instead

of reporting the incident, Velasco, Esquivel, and Deleon attacked Sanchez, stomping, kicking, and beating him. As a result of this attack, Sanchez sustained serious injuries, including:

> comminuted and mildly displaced fractures, bilaterally, of the nasal bones; comminuted and non-displaced fractures, bilaterally, of the anterior aspect of the maxilla (upper jaw); comminuted mildly displaced fractures of the nasal septum; prominent facial soft tissue swelling; and multiple bruises, contusions, and lacerations to the face and head requiring sti[t]ches.

Thereafter, the men did not cooperate with investigators and provided little to no information regarding the assault on either Esquivel or Sanchez.

On May 13, 2015, Esquivel, Velasco, and Deleon were charged in a one-count superseding indictment with assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 2, 113(a)(6). Velasco ultimately pleaded guilty to a bill of information for misprision of a felony in violation of 18 U.S.C. §§ 4, 113(a)(6). The presentence investigation report ("PSR") set Velasco's total offense level at eight, with a criminal history category of V, which resulted in a Guidelines range of fifteen to twenty-one months. The Government objected to the PSR, arguing that the shoes Velasco used to "stomp" Sanchez's head against the "solid prison floor" were dangerous weapons, requiring a four-level enhancement pursuant to U.S.S.G. § 2A2.2(b)(2)(B).

The district court issued a memorandum ruling, granting the Government the opportunity to introduce evidence of the assault on Sanchez. At the subsequent hearing, the Government presented the testimony of Jasmine Melbert, a corrections officer at the prison. She described the incident, explaining that Deleon, Velasco, and Esquivel took turns "stomping" Sanchez's head into the floor with "the bottom of their feet." She gave them "direct orders to stop," which the men ignored. She went on to explain that Sanchez was defenseless, as Deleon, Velasco, and Esquivel were holding his

No. 16-30341

arms back "punching him in the facial area as he hit the floor and . . . stomp[ing and] kick[ing] him."

The district court noted that under § 2A2.2(b)(2)(B), "[d]angerous weapons can be almost anything depending on the manner in which they are used." Finding Melbert's testimony "clear [and] unequivocal," and accepting it "as fact," the district court concluded that the event involved the use of a dangerous weapon and sustained the Government's objection to the PSR. Applying the four-level enhancement, Velasco's revised Guidelines range was twenty-seven to thirty-three months. The district court sentenced Velasco to an above-Guidelines sentence of thirty-six months to "run consecutively to any undischarged term of imprisonment" and to be followed by a one year term of supervised release. Velasco timely appealed.

## II.

When a defendant objects to the Guidelines calculation in the district court, this court "review[s] the application of the Guidelines *de novo* and the district court's factual findings—along with the reasonable inferences drawn from those facts—for clear error." *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013) (citing *United States v. Harris,* 702 F.3d 226, 229 (5th Cir. 2012)). Whether an item is a dangerous weapon is a finding of fact. *United States v. Estrada-Fernandez*, 150 F.3d 491, 497 (5th Cir. 1998) (per curiam) (citing *United States v. Schoenborn,* 4 F.3d 1424, 1433 (7th Cir. 1993) ("Whether or not an object constitutes a dangerous weapon . . . is a question of fact and necessarily depends on the particular circumstances of each case.")). Therefore, we review this finding for clear error. *See United States v. Ortegon*, No. 01-51202, 2002 WL 1860281, at *1 (5th Cir. June 17, 2002). Under the clear error standard, a factual finding is clearly erroneous only where, in light of the record, "the court is left with the definite and firm conviction that a

No. 16-30341

mistake has been committed." *United States v. Malone*, 828 F.3d 331, 337 (5th Cir.) (quotation and citation omitted), *cert. denied*, 137 S. Ct. 526 (2016).

Section 2A2.2(b)(2)(B) provides a four-level enhancement if a dangerous weapon, including "any instrument that is not ordinarily used as a weapon," was used in more than just a threatening manner or simply brandished or discharged. § 2A2.2(b)(2)(B) & cmt. n.1. Thus, whether an item is a dangerous weapon turns on whether "such an instrument is involved in the offense with the intent to commit bodily injury." *Id.* The intent to do bodily harm is not measured by the actor's subjective motivation, but rather, it is measured objectively, by what someone in the victim's position might reasonably conclude from the assailant's conduct. *United States v. Perez,* 897 F.2d 751, 753 (5th Cir. 1990); *compare United States v. Nunez-Granados*, 546 F. App'x 483, 486–87 (5th Cir. 2013) (per curiam) (finding the enhancement did not apply, because the defendant kicked the officer with the intent to escape, not to cause the officer serious injury), *with United States v. Serrata*, 425 F.3d 886, 893–94, 909–10 (10th Cir. 2005) (holding that shoes are a dangerous weapon when used to repeatedly stomp a victim's head, thus revealing a clear intent to do serious harm).

## III.

On appeal, Velasco argues that the Government's interpretation of § 2A2.2 is overly broad and would allow for a four-point enhancement on any defendant that used any object in order to harm his or her victim, including bare hands or feet. He further asserts that the Government's witness, Melbert, could not say with certainty what kind of shoes the inmates were wearing during the altercation, noting that in *Serrata*, the case upon which the Government relies, the assailants were likely wearing steel-toed boots. The Government avers that, based on the Guidelines' plain text, ordinary objects,

4

even those that are not inherently dangerous, can be considered dangerous weapons if used in a manner intended to inflict bodily injury.

In this case, Velasco's intent was clear. *See United States v. Hatch,* 490 F. App'x 136, 137, 139 (10th Cir. 2012) (affirming enhancement where the defendant pulled a man out of his car and kicked at and "stomped on" his head repeatedly, noting that under those facts, the defendant was "clearly using her shoes with the intent to commit bodily injury"). After witnessing Sanchez and Esquivel's altercation, Velasco and the other men retaliated against Sanchez, taking turns holding his arms back while the others stomped his head against the hard prison floor. This retaliation resulted in Sanchez's sustaining serious bodily injury for which he was hospitalized. From Sanchez's perspective, it is reasonable to conclude that the assailants' intent was to do him serious bodily harm. *See Perez,* 897 F.2d at 753; *Nunez-Granados*, 546 F. App'x at 487. That the shoes were not steel-toed is immaterial. *See Serrata*, 425 F.3d at 910 ("For the district court to conclude the boots to be a dangerous weapon, it did not have to find that the boots would somehow cause more serious injur[ies] than any other type of normal footwear . . . ." (quotation omitted)). Accordingly, the district court did not clearly err in applying the four-level enhancement. *See Alcantar*, 733 F.3d at 146.

## IV.

Because the district court did not clearly err under the facts of this case in concluding that shoes in conjunction with the hard ground constitute a dangerous weapon, we AFFIRM.